[Civ. No. 8831. First Appellate District, Division Two.—September 13, 1933.]

EXCAVATING EQUIPMENT DEALERS, INC. (a Delaware Corporation), Respondent, v. THE AETNA CASUALTY AND SURETY COMPANY (a Corporation), et al., Appellants.

Roland J. White, H. B. Wolfe, Keyes & Erskine and J. Benton Tulley for Appellants.

Clyde C. Sherwood for Respondent.

STURTEVANT, J.—This is an appeal from a judgment in favor of the plaintiff in an action on a surety bond.

On September 29, 1930, the state of California, acting through the department of public works, awarded to H. H. Boomer a contract to grade and construct a certain road in Trinity County. The contract covered several parcels. After the award was made Mr. Boomer, as principal, and the Aetna Casualty and Surety Company, as surety, executed in due form the bond required by the provisions of the statute. (Chap. 321, Stats. 1925, p. 538.) At about the same time Mr. Boomer employed Bruce Markle as subcontractor to do the excavating on one parcel. About October 31, 1930, Mr. Markle had in place on the job a power shovel and commenced to execute the contract. That power shovel was owned by the plaintiff and was turned over to Mr. Markle under a written lease. Before the award

was made to Mr. Boomer, in expectation of the business, Mr. Markle had entered into oral negotiations for the rental of the shovel and after the award was made the written lease was executed October 14, 1930. Before employing Mr. Markle, Mr. Boomer had a conversation with him regarding his equipment, finances and ability to execute the contract if a subcontract was awarded to him. Mr. Markle stated that he had a shovel and two trucks. In reply to Mr. Boomer's question he stated that he was the owner of the shovel but that it was not wholly paid for. Mr. Boomer made no inquiry as to who was Mr. Markle's creditor or the amount of the indebtedness. By its terms the lease covered a term of six months and the rental provided was $600 per month to commence from the time the machine was loaded and to continue until the machine was returned to lessor's place of business. The rent was payable on the tenth day of each calendar month, but the plaintiff consented in a letter of even date that the first month's rent might be postponed for thirty days. When the first rent became payable the plaintiff rendered its bill therefor to Mr. Markle and monthly thereafter. The excavation under the main contract was completed by the end of December or the first part of January. Some extra work was ordered by the state officials which Mr. Boomer turned over to the subcontractor and the extra work was done by him. All work was completed in February, 1931. A stop notice in due form was served by the plaintiff on March 6, 1931. In that notice the plaintiff claimed rental at $500 per month for four and one-half months in the total sum of $2,250. Thereafter the plaintiff commenced this action. The defendants answered separately. The action was tried before the trial court sitting with a jury. The jury returned a verdict in favor of the plaintiff and from the judgment thereon the defendants have appealed.

It is contended that the plaintiff is estopped. That claim is based on two theories. The first theory is as follows: The defendants assert that when Mr. Markle negotiated for his contract he told Mr. Boomer that he owned the shovel but it was not wholly paid for; and that his creditor would not make any claim against Mr. Boomer. The defendants also state that Mr. Markle had a sign attached to the cab on the shovel and that the sign had printed thereon

in large letters words indicating that it belonged to Mr. Markle; that the plaintiff knew all of these facts but took no steps to inform the defendant Boomer of its claim of ownership. In reply the plaintiff cites passages from the record showing that there was a conflict in the evidence as to what statements were made by Mr. Markle and that there was evidence to the effect that the plaintiff was not informed that Mr. Markle had made the statements charged to him or that Mr. Markle had attached to the shovel the sign above mentioned. ■ The second theory presented by the defendants is based on the provisions of section 3543 of the Civil Code, which provides, ''Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer.'' This theory was not presented during the trial and is advanced for the first time in this court. In making this contention the defendants assert that the plaintiff was negligent because it did not, on Mr. Markle's first default in payment of his rent, notify Mr. Boomer. The plaintiff replies that the second theory is not applicable to the facts of this case because it must be assumed from the verdict returned by the jury that it made the implied finding that the plaintiff was not negligent. That is true. Furthermore, it is perfectly clear that under the authorities there can be no doubt but that Mr. Markle could have been required by Mr. Boomer to execute to him the bond provided for in chapter 321 of the Statutes of 1925, and that Mr. Boomer was negligent in not making the request. It follows that under the facts it may not be said as a matter of law that the plaintiff was estopped. The defendants cite and rely on *MacDermot* v. *Hayes,* 175 Cal. 95 [170 Pac. 616], and *Carter* v. *Rowley,* 59 Cal. App. 486 [211 Pac. 267]. An examination will disclose that neither case is pertinent to the facts before us.

■ It is earnestly contended that the verdict was excessive. The defendants concede that the evidence was conflicting as to the value of the shovel and that there was evidence to the effect that the value per month was as much as $500. However, they earnestly contend that the shovel started to work on November 4, 1930, and it continued to work until December 23, 1930, when the work stopped for the holidays. It is then asserted that the work again started on December 26th, and was finished on January 3,

1931. While it is true that such evidence was given, there was evidence that the rental value was as high as $600 per month. There was also evidence that the work commenced October 27, 1930, and continued until February 27, 1931. Again, there was evidence that, working in certain formations, the shovel would excavate only about 50 yards per day, and that it would have taken 160 days, or nearly five months. In other words, there was evidence to the effect that the use of the shovel for a period of five months was reasonably necessary, and, at $600 per month, the damage proved amounted to $3,000. The verdict of the jury was for the sum of $2,250. Applying the rule stated in *Burr* v. *Gardella*, 53 Cal. App. 377, 396, 397 [200 Pac. 493], the verdict was not excessive. It is also claimed that some of the work was extra work. Whether all of the work was done under Mr. Markle's first contract or whether some was extra work, all of it was done by him for Mr. Boomer under the latter's contract with the state.

■ The defendants complain because the trial court modified an instruction which they requested. The instruction purported to define the rule for ascertaining damages. The closing part of the instruction was, " . . . and their only right of action is one made under good faith for the use of said machinery only, and the value of this use must be a reasonable value *as determined by the time it actually worked on said job,* and the reasonable value for such time as may be determined by you regardless of the amount of rental mentioned in the lease agreement between plaintiff and defendant Markle". The modification consisted in striking out the words which we have emphasized. We think the trial court did not err in striking them out. Whether the shovel stood idle on Sundays, holidays and stormy weather was immaterial to the issue on trial. (*Williamson* v. *Egan,* 209 Cal. 343, 349 [287 Pac. 503].)

■ The defendants offered evidence which the trial court refused to receive to the effect that Mr. Markle was the reputed owner of the shovel. The evidence was properly rejected. Ownership was involved but reputed ownership was immaterial.

■ The defendants requested an instruction regarding the law of estoppel. It was refused and they assert the

refusal was error. We think they are mistaken. The law on that subject as applicable to the case on trial was fully covered by other instructions.

After the trial court had instructed the jury one of the jurors stated that he would like to hear a restatement of the law of estoppel. Thereupon the court re-read the instructions on estoppel. In doing so a paragraph regarding reasonable value was also read. The defendants complain that the effect of reading the latter paragraph was to emphasize the case for the plaintiff as against the defendants. It will suffice to state that the record discloses nothing tending to show that the trial court in any manner expressed its opinion on the facts. It confined its attention solely to reading again instructions that had already been read.

The judgment is affirmed.

Nourse, P. J., and Ogden, J., *pro tem.*, concurred.