[Civ. No. 6567. First Appellate District, Division Two.—December 12, 1928.]

H. A. BRIDGES, Respondent, v. E. L. PRICE et al., Defendants; CONTINENTAL CASUALTY COMPANY (a Corporation), Appellant.

J. Hampton Hoge for Appellant.

Grant R. Bennett for Respondent.

DOOLING, J., *pro tem.*—This is an appeal by defendant Continental Casualty Company from a judgment in favor of plaintiff upon a broker's bond given by appellant under the provisions of the Corporate Securities Act (Stats. 1917, p. 673), as surety for defendant Price. The evidence showed that on September 29, 1925, respondent Bridges delivered to one Ormond, as agent for Price, 210 shares of capital stock of National Automatic Music Company, to be exchanged for 336 shares of Monolith Portland Cement Company stock. Subsequently Price admitted to Bridges that he had sold his Music Company stock and had not procured the Cement Company stock, and on November 19, 1925, Price persuaded respondent to take his (Price's) promissory note for the value of the stock, payable twenty-seven days after date. The note was never paid, and after its maturity this action was brought on the original obligation and appellant was joined as a defendant upon its bond. Judgment followed against both defendants.

The bond here in question recites that it is given as "required under the provisions of paragraph 3 of section 5 of said act (Corporate Securities Act) as amended in 1923." As a matter of fact, prior to the execution and delivery of the bond that paragraph had again been amended in 1925 (Stats. 1925, p. 967), so as to enlarge the surety's liability on the bond. Because of this recital appellant insists that its obligations are to be measured by the provisions of the act as it read in 1923 and prior to the amendment of 1925. Under those provisions it clearly would not be liable in this action. (*Blumenthal* v. *Larson*, 79 Cal. App. 726 [248 Pac. 681] ; *Mitchell* v. *Smith*, 204 Cal. 197 [267 Pac. 540].)

This contention, in our judgment, is not tenable. The bond was a statutory bond, and the law in force at the date of its giving is a part of it as effectually as if such provisions were in words inserted in it. (*Milliron* v. *Dittman*, 180 Cal. 443 [181 Pac. 779].) Appellant is presumed to know the law, and hence to know that the statute under which the bond was given had been again amended in 1925. The statute as amended in 1923 had ceased to have exist-

ence. It was superseded by the amendment of 1925. Either the reference was intended as a reference to the statute of 1925 or the bond was a nullity, because no bond was any longer required or provided for by the statute of 1923. It has frequently been held, in construing amendments to statutes which were incorrectly referred to in the amending statute, that if the court can clearly see that the reference was intended for a particular statute the amendment will be construed to carry out its evident intent in spite of the mistake in the reference contained in the amending act. (*People* v. *King,* 28 Cal. 265; *Estate of Campbell,* 143 Cal. 623 [77 Pac. 674]; *People* v. *Bradford,* 1 Cal. App. 41 [81 Pac. 712]; *People* v. *Camp,* 42 Cal. App. 411 [183 Pac. 845]; *People* v. *Troutman,* 187 Cal. 313 [201 Pac. 928].) We can see no good reason why the same rule should not be applied in the construction of a contract. ▉ Where an obvious mistake appears on the face of the contract it can be corrected by the court in an action at law and without recourse to equity. (*Wagenblast* v. *Washburn,* 12 Cal. 208; *Sprague* v. *Edwards,* 48 Cal. 239; *Wilcoxson* v. *Miller,* 49 Cal. 193; *Gray* v. *Maier & Zobelein Brewery,* 2 Cal. App. 657 [84 Pac. 280]; *Black Eagle Oil Co.* v. *Belcher,* 22 Cal. App. 258 [133 Pac. 1153]; *Hunt* v. *Barker,* 27 Cal. App. 776, 778 [151 Pac. 165].) The reference to the statute as amended in 1923 is so obviously a mistaken reference to the statute as amended in 1925 that it must be so read, under the authorities above cited, and as a matter of plain common sense. Further support for this construction of the bond is found in *Town of Mill Valley* v. *Massachusetts etc. Co.,* 68 Cal. App. 372 [229 Pac. 891].

▉ Appellant insists that since surety contracts are to be construed *strictissimi juris* it cannot be held beyond the express letter of the bond. It is a sufficient answer to this contention to refer to section 2837 of the Civil Code, which provides: "In interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts." It is only after the meaning of the terms of the contract has thus been ascertained that the rule of *strictissimi juris* comes into operation to prevent the extending of the obligation beyond the fair meaning so ascertained. (*Roberts* v. *Security T. & S. Bank,* 196 Cal. 557, 566 [238 Pac. 673].)

Having determined that the measure of appellant's liability is to be determined from the provisions of the act as it read in 1925, when the bond was given, the language of that act must be construed in order to determine whether it fairly covers the facts of this case.

Paragraph 3 of section 5 of the Corporate Securities Act provided, before its amendment in 1925, that "said bond shall be conditioned upon the faithful compliance with the provisions of law by said applicant and by all agents representing the said applicant." This language was construed in *Blumenthal* v. *Larson, supra,* and *Mitchell* v. *Smith, supra,* to limit the liability on the bond to cases where the broker was guilty of fraud in the sale of securities as defined by section 14 of the act. The 1925 amendment added to the language above quoted the following: "and the honest and faithful application of all funds received and the faithful and honest performance of all obligations and undertakings in the purchase and sale of securities." The purpose and effect of this amendment was obviously to extend the liability upon such bonds beyond that which was imposed by the statute before the amendment. Whatever may be meant by the word "honest," the "faithful performance of all obligations and undertakings" means no more than performance of those obligations and undertakings according to their terms. Bonds conditioned for the "faithful performance" of a contract have always been construed as being breached by any failure of performance in the principal contract. (*Garrett* v. *Dodson* (Tex. Civ. App.), 199 S. W. 675, 682; *General Bonding etc. Co.* v. *Hill* (Tex. Civ. App.), 195 S. W. 873; *Lamson* v. *Maryland Casualty Co.,* 196 Iowa, 1185 [194 N. W. 70]; *Trinity Parish* v. *Aetna Indemnity Co.,* 37 Wash. 515 [79 Pac. 1097]; *Long* v. *American Surety Co.,* 23 N. D. 492 [137 N. W. 41]; *Hensley* v. *School District,* 97 Kan. 56 [154 Pac. 253].) In fact, such bonds are frequently referred to as "faithful performance bonds." Price having failed in the faithful performance of his obligation in the sale and purchase of securities for Bridges, appellant became liable to Bridges upon its bond.

It is further argued by appellant that the taking of the promissory note from Price amounted to an extension of time on the principal contract and hence discharged appellant from its obligation as surety. It is true that the

taking of a promissory note for an indebtedness postpones the time of payment of the original obligation (*Gnarini* v. *Swiss American Bank*, 162 Cal. 181 [121 Pac. 726]), and ordinarily an extension of time on the principal contract discharges the surety. (*Tuohy* v. *Woods*, 122 Cal. 665 [55 Pac. 683].) But appellant misconceives the nature of its obligation. Its bond is conditioned on "the faithful and honest performance of *all* obligations and undertakings in the purchase and sale of securities." When the original contract was entered into the bond covered the performance of the obligations of that contract. When the promissory note was taken it was in conditional payment for securities sold by Price for Bridges and the bond likewise covered its performance. The legal effect of the taking of the note was that Price agreed to pay the note at maturity or to be liable upon the original obligation at the option of Bridges. (20 Cal. Jur., pp. 920–925, sec. 13.) That was likewise an undertaking in the purchase and sale of securities within the meaning of the section, and so was covered by the bond. No matter how many successive agreements Bridges and Price might have made concerning their stock transaction, the bond would have covered each of them in turn. Appellant's argument would be good if it had furnished an undertaking to secure the performance of a single obligation. It fails because, under the provisions of the statute, the bond was security for the performance not of one, but of all obligations in the purchase and sale of securities.

Appellant's final contention, that the complaint fails to state a cause of action, is sufficiently answered by the fact that the evidence, which was introduced without objection, fully supports the judgment. If the complaint was defective the admission of this evidence without objection cured the defect. (*Slaughter* v. *Goldberg, Bowen & Co.*, 26 Cal. App. 318 [147 Pac. 90].) A retrial on this ground could only result in an amendment to the complaint and a new judgment for plaintiff.

Judgment affirmed.

Koford, P. J., and Sturtevant, J., concurred.