[Civ. No. 9976. Second Appellate District, Division One.—April 4, 1936.]

LULU C. WHITE, Respondent, v. FINANCIAL GUARANTEE CORPORATION, LTD. (a Corporation), et al., Appellants.

Leslie S. Bowden for Appellants.

Ben C. Cohen and Irving Cohen for Respondent.

WHITE, J., *pro tem.*—This action was commenced against defendants Financial Guarantee Corporation, Ltd., a corporation; Fred Rogers, and others who do not appear herein as appellants, to recover certain moneys alleged to have been obtained by said defendants from plaintiff through fraudulent representations in connection with certain brokerage transactions had with the aforesaid defendants. Joined also

as a party defendant was the appellant Coast Surety Corporation, as surety for defendant Financial Guarantee Corporation, Ltd., under and by virtue of a bond executed by said surety company pursuant to the provisions of section 6 (formerly section 5) of the Corporate Securities Act (Stats. 1917, p. 673, and amendments thereto).

The cause was tried before a jury, which returned a verdict against the defendants in the sum of $2,446.52, and assessed exemplary damages against the defendants in the sum of $1,000. A motion for a new trial was interposed and denied, but the judgment against defendant Coast Surety Corporation was reduced by the trial court in the sum of $1,000. Judgment was entered accordingly, from which this appeal is prosecuted. Appellants urge a reversal of the judgment on the grounds that the trial court erred in overruling defendants' demurrers to the second amended complaint and in refusing to exclude all evidence upon the trial of the cause, as well as in denying defendants' motion for a nonsuit. As further grounds for reversal of the judgment, appellants assert that the evidence is insufficient to support the judgment; that the court erred in denying defendants' motion for a new trial, and in holding the defendant Coast Surety Company liable under its bond.

We have examined the evidence, and it is apparent therefrom, we think, that a fraud was practiced on respondent; and although the testimony is conflicting on several points, we believe that as a whole it is legally sufficient to support the verdict arrived at by the jury, that the fraud was actionable, and entitled respondent to the relief granted her.

The second amended complaint alleged, and there was sufficient evidence to sustain plaintiff's contentions, that appellant Financial Guarantee Corporation, Ltd., and its officers and agents were engaged in the brokerage business, handling corporate securities, and counseling and advising investors; that plaintiff was an elderly woman with a limited experience in dealing with stocks and securities; that defendants represented to plaintiff that they would make safe investments in securities listed on the New York stock exchanges, which would return an income without any speculation or danger of loss of the investment; that defendants further represented to plaintiff that they would not purchase stocks on behalf of the plaintiff on marginal transactions, or on partial

cash payments, but would purchase stocks for and on behalf of the plaintiff by making full cash payment for said purchases. That further representations were made by defendants to plaintiff that Financial Guarantee Corporation, Ltd., had been and was in a good position to have inside information as to the condition of the investment markets in New York City, and the political, industrial, and credit situation in Washington, D. C., which would have a direct bearing upon the market situation in New York. The second amended complaint further averred, and there was evidence to the effect, that the defendants further represented to plaintiff that the defendant corporation had direct telegraph wires to the said investment markets and exchanges; that said defendant corporation had advance information and advance notices as to the future transactions and movements of the exchanges and investment markets in New York City; that by reason of said advance information defendant corporation knew when to sell securities at the right time, and thereby make profits for its clients; that the defendant corporation knew in advance what the investment markets and exchanges in New York City would do with reference to the rise and fall in prices of securities listed thereon, and that it knew the credit situation in Washington, D. C., in advance, so that defendants could tell how the markets in New York City would react; that by reason of such facilities and advance information defendant Financial Guarantee Corporation, Ltd., and its agents could prevent any loss to plaintiff in her investments through such corporation. Plaintiff established the falsity of the representations by which defendants claimed to have inside information as to the condition of the investment markets in New York City and the political, industrial and credit situation in Washington, D. C.; and also disproved the truth of the representations that defendant corporation was receiving advance information as to movements in the investment markets and exchanges of New York City, and that it knew in advance what the investment markets and exchanges in New York City would do with reference to the rise and fall in prices of securities; and also disproved defendants' claim of direct telegraphic facilities to eastern investment markets and exchanges.

Possibly, as appellants contend, some of the misrepresentations related more or less to matters of opinion, but

expression of opinion, to avoid an action for deceit or fraud, should be honestly entertained by the person making the same (*MacDonald* v. *De Fremery,* 168 Cal. 189 [142 Pac. 73]; *Phelps* v. *Grady,* 168 Cal. 73 [141 Pac. 926]; *Barron Estate Co.* v. *Woodruff Co.,* 163 Cal. 561 [126 Pac. 351, 42 L. R. A. (N. S.) 125]); and whether or not representations are of fact or matters of opinion depends largely on the circumstances. (*Hall* v. *Mitchell,* 59 Cal. App. 743 [211 Pac. 853]; *Hodgkins* v. *Dunham,* 10 Cal. App. 690 [103 Pac. 351].) As was said in *Zwart* v. *Langfield,* 93 Cal. App. 328, 333 [269 Pac. 740]:

" . . . Moreover, the expression of opinion may amount to fraud where it is accompanied by active misrepresentations or concealment, or where it relates to a subject as to which the parties have no knowledge or means of ascertaining the truth. . . . The general rule is that one has a right to rely on statements of material facts essentially connected with the substance of the transaction where one of the parties is ignorant or inexperienced in regard to matters concerning which material representations are made, and such ignorance is known to the other party, who is also aware that reliance is being placed on his representations, and that the facts are not, and cannot be expected to be, within the first party's knowledge (12 Cal. Jur. 754, and cases cited); and if one material statement be false it is sufficient ground for rescission. (*Beeman* v. *Richardson,* 185 Cal. 280 [196 Pac. 775].) . . . "

Under the foregoing rules, which we feel are particularly applicable to the facts of the present case, we are of the opinion that the evidence is sufficient to sustain the verdict and judgment entered thereon. And the facts hereinbefore noted having been averred in the second amended complaint, we are of the opinion that the trial court was correct in overruling defendants' demurrers and refusing to exclude all evidence upon the trial of the case.

Appellants earnestly urge, as a further ground for reversal, that the trial court fell into error in holding the defendant Coast Surety Corporation liable under its bond. The bond here in question was executed in accordance with the provisions of the Corporate Securities Act, *supra.* Appellants contend that the bond provided for by the statute

was never intended to cover the type of transaction involved in the case at bar, for the reason that an examination of the act discloses that its primary purpose is to vest in a corporation commissioner certain powers to regulate the sale of a certain class of securities; that section 3 of the act provides, in effect, that no company shall sell, or take any subscriptions for, any securities of its own issue, until it shall have first applied for and secured from the corporation commissioner a permit authorizing the same. Appellants argue that it was undoubtedly the intention of the legislature, in providing for the certificate of a broker and a bond, to vest in the corporation commissioner power to regulate the sale of companies' securities through brokers, that is, securities which were subject to the control of the corporation commissioner. They challenge the claim that the legislature intended that the corporation commissioner should control brokers who, like the defendants in the instant case, were selling securities of their clients listed on the New York and other stock exchanges. They assert that section 6 of the act was never intended to inure to the benefit of investors who were selling their own securities through a broker, unless they were selling original issues of stock or other securities; that the position of the defendant brokerage company herein was that of simply executing sales and purchases for its customers, and not actually selling its customers anything.

The contention of appellant Coast Surety Corporation, that under the terms of the Corporate Securities Act it is not liable to respondent in this case under its bond, in our judgment, is not tenable. The act in question, although adopted in 1917, was amended in 1923, and again in 1925 (Stats. 1925, p. 967), and in 1931 (Stats. 1931, p. 943), so as to enlarge the surety's liability on the bond.

Paragraph 3 of section 5 of the Corporate Securities Act, provided, before its amendment in 1925, that, " . . . Said bonds shall be conditioned upon the faithful compliance with the provisions of law by said applicant and by all agents representing the said applicant, . . . " This language was construed in *Blumenthal* v. *Larson,* 79 Cal. App. 726 [251 Pac. 241], and *Mitchell* v. *Smith,* 204 Cal. 197 [267 Pac. 540], to limit the liability on the bond to cases where the broker was guilty of fraud in the sale of securities as defined by section 14 of the act.

In 1925 the section was amended to read in part as follows:
" . . . Said bond shall be conditioned upon the strict compliance with the provisions of this act, *and the honest and faithful application of all funds received and the faithful and honest performance of all obligations and undertakings in the purchase or sale of securities* by said broker, his agents and employees. Said bond shall be further conditioned upon the payment of all damages suffered by any person damaged or defrauded by reason of the violation of any of the provisions of this act, *or by reason of any fraud connected with or growing out of any transaction contemplated by the provisions of this act. . . . "*

In 1931 the legislature reenacted and amended the foregoing section, as section 6 (Stats. 1931, p. 943), so as to enlarge the liability of the surety to include any instalment purchase contracts involving the sale of a security, but the 1931 amendment has no application to the facts in the instant case.

As was said in *Bridges* v. *Price,* 95 Cal. App. 394, 398 [273 Pac. 72], the purpose and effect of the 1925 amendment was obviously to extend the liability upon such bonds beyond that which was imposed by the statute before the amendment. Commenting thereon, the court said:

"Whatever may be meant by the word 'honest', the 'faithful performance of all obligations and undertakings' means no more than performance of those obligations and undertakings according to their terms. Bonds conditioned for the 'faithful performance' of a contract have always been construed as being breached by any failure of performance in the principal contract. (*Garrett* v. *Dodson,* (Tex. Civ. App.) 199 S. W. 675, 682; *General Bonding & Casualty Ins. Co.* v. *Hill,* (Tex. Civ. App.) 195 S. W. 873; *Lamson* v. *Maryland Casualty Co.,* 196 Iowa, 1185 [194 N. W. 70]; *Trinity Parish* v. *Aetna Indemnity Co.,* 37 Wash. 515 [79 Pac. 1097]; *Long* v. *American Surety Co.,* 23 N. D. 492 [137 N. W. 41]; *Hensley* v. *School District,* 97 Kan. 56 [154 Pac. 253].) In fact, such bonds are frequently referred to as 'faithful performance bonds'."

The appellant Financial Guarantee Corporation, Ltd., having failed in the faithful performance of its obligation in the sale and purchase of securities for respondent herein, and the jury by its verdict having found defendant Financial Guar-

antee Corporation, Ltd., guilty of fraud in connection with its transactions with plaintiff, we are of the opinion that said surety company became liable to respondent upon its bond.

In our opinion, appellant Financial Guarantee Corporation, Ltd., comes within the definition of a broker as defined by the Corporate Securities Act, and its relation to respondent herein was that of a broker as contemplated by the Corporate Securities Act, because undoubtedly, from the evidence in this case, it was dealing in securities issued by others, and was offering the same for sale and negotiating for the purchase thereof. We think the trial court was justified in denying the motion for nonsuit as to all appellants herein, and was correct in holding that appellant Coast Surety Corporation was liable to respondent herein under the bond in question.

· The attempted appeal from the denial of the motions for new trial is dismissed, for the reason that no appeal lies from such orders. The judgment appealed from is affirmed.

Houser, P. J., and York, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 1, 1936.